997 So.2d 375 (2008)
Gabby TENNIS, Appellant,
v.
STATE of Florida, Appellee.
No. SC06-730.
Supreme Court of Florida.
December 11, 2008.
Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
Appellant, Gabby Tennis, appeals his conviction for first-degree murder and sentence of death. Our jurisdiction over death sentences is mandatory. See art. V, § 3(b)(1), Fla. Const. Tennis raises eighteen issues on appeal.[1] However, we address *376 only one issue because it mandates reversal. In his third issue on appeal, Tennis alleges that the trial court erred in failing to conduct a hearing under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), after Tennis made multiple requests to represent himself. We agree that this failure constituted error. Because of this error, which is of constitutional magnitude and not subject to a harmless error analysis, we are compelled to reverse and remand for proceedings consistent with this opinion.
This case arises out of the felony murder on June 2, 2003, of a ninety-one-year-old victim, Albert Vassella, with burglary and robbery as the underlying felonies. Tennis was nineteen years old at the time of the crime. His codefendant and girlfriend, Sophia Adams, who pled guilty to second-degree murder and testified against him at trial, was sixteen years old at the time.
While an extensive recitation of the facts is unnecessary in light of our reversal, the facts showed that the murder was motivated by money; specifically money to pay Liza Boltos, Sophia Adams's mother, for the "right" to marry her daughter. At trial, Tennis did not deny being present at the victim's house but denied that he murdered the victim and disputed the circumstances of the crime. The forensic evidence placed both Tennis and Adams at the crime scene. However, the facts also showed that Boltos was the person who knew the victim because she cleaned his house and borrowed small amounts of money from him in the past. She also testified she was a member of the "gypsy culture," as were Adams and Tennis, and that Adams had "eloped" with Tennis. With regard to the elopement, Boltos stated, "I called his father and I told him that his son eloped with my daughter and what is he going to do about it ... [but] he called me, you mother fucker, then he hung up." She then urged Tennis to contact his father for the "three, four or five thousand" dollars that she wanted in exchange for Adams, but his father refused. Based on this testimony, as well as other testimony and physical evidence, Tennis was ultimately convicted of the murder of Vassella.
With this brief factual background, we proceed to examine the circumstances that led to Tennis's demand to represent himself at trial and the failure of the trial court to conduct the appropriate inquiry. *377 On April 8, 2005, Tennis filed his first motion to dismiss counsel, alleging that counsel failed to "perfect a defense" for Tennis and ignored Tennis's attempts to contact him. On April 15, 2005, the court held a hearing to address Tennis's motion, in which the court stated it would conduct a Nelson inquiry.[2] During the hearing, Tennis alleged that counsel demanded $10,000 from Tennis's father in order to hire an expert witness. Tennis further alleged that counsel refused to investigate Liza Boltos's participation in the murder. The court found that there had been no showing that counsel "ha[d] not been competently representing" Tennis and denied the motion to dismiss counsel.
Subsequently, on June 6, 2005, Tennis filed another motion to dismiss counsel, alleging a conflict of interest with his counsel and that counsel failed to prepare for trial.[3] The court addressed Tennis's motion at a hearing on June 10, 2005. In response to Tennis's claim that counsel was incompetent, the trial court asked Tennis what he could show to substantiate his claim. In addition to other grounds, Tennis referred the court to out-of-court conversations between his family and counsel, stating that "there was [sic] verbal confrontations of I don't know, of cursing and this and that. It was very, very, a lot of things that is [sic] going on that's outside of the courtroom you're not seeing." Moreover, Tennis stated, "I refuse to go to trial with him. I would like to go pro se, instead of having two prosecutors against me, I'll do it myself. Even though I don't know what I'm doing, I will have a better fighting chance." In denying the motion, the court stated that it found nothing in the record substantiating Tennis's claim regarding his motion to dismiss counsel and denied the motion based on its observations of counsel's in-court conduct. The trial court did not address Tennis's alternative request to represent himself.
Tennis then filed two pro se "motion[s] for leave to proceed as self counsel with appointment of standby counsel" on July 7, 2005, and July 28, 2005. In the motions, Tennis alleged that there was a conflict of interest between counsel and himself and that the cross-examination of adverse witnesses and the presentation of his defense would be impaired if he could not represent himself. The record reflects that the court did not hold a Faretta hearing despite the two separate motions to proceed pro se.
Under the United States Supreme Court's ruling in Faretta, an accused has the right to self-representation at trial. A defendant's choice to invoke this right "must be honored out of `that respect for *378 the individual which is the lifeblood of the law.'" Faretta, 422 U.S. at 834, 95 S.Ct. 2525 (quoting Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 25 L.Ed.2d 353(1970) (Brennan, J., concurring)). While giving more discretion to trial courts to examine a defendant's mental competency and mental capacity to represent himself, the United States Supreme Court in Indiana v. Edwards, ___ U.S. ___, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), reaffirmed the core importance of Faretta. Referring to Faretta as the "foundational `self-representation' case," the Court explained that the "Sixth and Fourteenth Amendments include a `constitutional right to proceed without counsel when' a criminal defendant `voluntarily and intelligently elects to do so.'" Edwards, 128 S.Ct. at 2383 (quoting Faretta, 422 U.S. at 807, 95 S.Ct. 2525). It further explained that the right came from five sources:
(1) a "nearly universal conviction," made manifest in state law, that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so," (2) Sixth Amendment language granting rights to the "accused," (3) Sixth Amendment structure indicating that the rights it sets forth, related to the "fair administration of American justice," are "persona[l]" to the accused, (4) the absence of historical examples of forced representation, and (5) "`respect for the individual.'"
Id. at 2383 (citations omitted) (quoting Faretta, 422 U.S. at 817-19, 834, 95 S.Ct. 2525).
Before the trial court can make a decision whether to permit the defendant to proceed pro se, the defendant's request for self-representation must be unequivocal. See State v. Craft, 685 So.2d 1292, 1295 (Fla.1996) ("[O]nly an unequivocal assertion of the right to self-representation will trigger the need for a Faretta inquiry."). In this case, during the June 10 hearing at which the court addressed his motion to dismiss counsel, Tennis stated, "I refuse to go to trial with him. I would like to go pro se instead of having two prosecutors against me, I'll do it myself. Even though I don't know what I'm doing, I will have a better fighting chance." He followed this pronouncement with two separate pro se motions requesting self-representation. We conclude that Tennis's statement at the hearing coupled with his pro se motions was an unequivocal and clear request for self-representation. Cf. Blake v. State, 972 So.2d 839, 845-46 (Fla. 2007) (denying defendant's claim that the court was required to inform him of his right to self-representation where defendant's motions to dismiss counsel and appoint new counsel did not request self-representation), cert. denied, ___ U.S. ___, 128 S.Ct. 2442, 171 L.Ed.2d 242 (2008).
Under Faretta and our precedent, once an unequivocal request for self-representation is made, the trial court is obligated to hold a hearing, to determine whether the defendant is knowingly and intelligently waiving his right to court-appointed counsel. See Hardwick v. State, 521 So.2d 1071, 1074 (Fla.1988). Based on the United States Supreme Court's recent decision in Indiana v. Edwards, we recognize that in certain instances a defendant may be precluded from exercising his or her right to proceed pro se after the trial court conducts a Faretta inquiry. Edwards, 128 S.Ct. at 2387-88 ("[T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so."). However, Edwards does not eliminate the requirement that a hearing be held to enable the trial *379 court to make the appropriate determination of whether a defendant can represent himself.[4] Moreover, unlike the court in Edwards, the trial court here did not indicate that its reason for not considering Tennis's request for self-representation was as a result of doubts as to his mental competency.
Under our clear precedent, and that of the district courts of appeal, the trial court's failure to hold a Faretta hearing in this case to determine whether Tennis could represent himself is per se reversible error. See State v. Young, 626 So.2d 655, 657 (Fla.1993) ("[T]he United States Supreme Court decision in Faretta and our rule 3.111(d) require a reversal when there is not a proper Faretta inquiry."); Rodriguez v. State, 982 So.2d 1272, 1274 (Fla. 3d DCA 2008) (holding that court's failure to conduct Faretta hearing was reversible error); Goldsmith v. State, 937 So.2d 1253, 1256-57 (Fla. 2d DCA 2006) (holding that the denial of the right of self-representation is not amenable to harmless error analysis).
The State alternatively argues that the trial court acted properly in denying Tennis's pro se request because the request was part of an ongoing attempt by Tennis to delay and frustrate the proceedings. Cf. Tyler v. State, 945 So.2d 662, 663-64 (Fla. 4th DCA) (rejecting defendant's Faretta claim where request to proceed pro se was an attempt to delay prosecution and defendant failed to make an unequivocal demand to represent himself), review denied, 967 So.2d 199 (Fla.2007); see also Haram v. State, 625 So.2d 875, 875 (Fla. 5th DCA 1993) (affirming trial court's denial of defendant's request to represent himself because the request was "not in good faith, but ... designed solely for the purpose of further delay"). "Our cases make clear that a trial judge is not compelled to allow a defendant to delay and continually frustrate his trial." Young, 626 So.2d at 657. However, that does not mean that the trial court can fail to hold a Faretta hearing after an unequivocal request for self-representation. Further, the trial court did not make findings that Tennis's motive in filing the motions was to delay his trial. Cf. Fleck v. State, 956 So.2d 548, 550 (Fla. 2d DCA 2007) (rejecting State's argument that the court was *380 justified in denying the defendant's request because of an attempt to delay proceedings where court made no findings that motions were improper attempts to delay).
We understand that in criminal cases, and especially in a death penalty case where the stakes could not be higher, judges may become frustrated over what they perceive to be efforts on the part of a defendant to frustrate or delay the proceedings. We also recognize that presiding over death penalty cases is a difficult and challenging responsibility for a trial judge. However, our cases make clear that when there is an unequivocal request for self-representation, a trial court is obligated to hold a Faretta hearing to determine if the request for self-representation is knowing and intelligent.[5] Without taking the preliminary step of holding a hearing on Tennis's request to represent himself after denying his motion to dismiss counsel, the trial court reversibly erred.
In sum, we conclude that the trial court had no proper basis for failing to conduct a Faretta inquiry and that a Faretta inquiry was mandated after Tennis's unequivocal request for self-representation. Accordingly, we reverse Tennis's conviction for first-degree felony murder and vacate his sentence of death and remand for further proceedings consistent with this opinion.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, LEWIS, CANADY, and POLSTON, JJ., concur.
PARIENTE, J., concurs with an opinion in which QUINCE, C.J., WELLS, and ANSTEAD, JJ., concur.
PARIENTE, J., concurring.
I fully concur with the majority's decision to reverse because of the trial court's failure to hold a hearing on Tennis's request for self-representation. However, I also write to express my concern as to why the trial judge did not allow Tennis to accept the State's offer of life imprisonment in exchange for a guilty plea or, alternatively, explain on the record her reasons for rejecting the plea. From my perspective, the trial court's rejection of Tennis's offer to plead guilty and the direction that Tennis proceed to trial prevented Tennis from receiving a guaranteed life sentence instead of death.
The record shows the following facts. On August 20, 2004, the State made an offer of life imprisonment to Tennis in exchange for a guilty plea to first-degree murder. Tennis's counsel advised him that he should take the plea, and Tennis ultimately agreed. The court then questioned Tennis about his understanding of the conditions of the plea and his ability to enter into the plea. When asked if he understood the rights he would be waiving if he entered a plea, Tennis responded:
I don't know if I understand them clearly, but to my knowledge I understand that I'm pleading to my best interest. That way, if I go to trial, and like you said, if they have too much evidence against me, that they might give me death. I'm scared to die....
The trial court continued in explaining the import of Tennis's entry of a plea under the plea offer. When asked if he understood, Tennis responded, "I'm sorry. I'm somewhere else. I'm thinking about something." The trial court repeated the information until Tennis finally agreed that he understood. However, when the subject *381 of whether Tennis was on any medication arose, the court learned that Tennis was taking four medications:
THE COURT: Did they give you any medicine over at the jail?
THE DEFENDANT: Yes.
THE COURT: What did they give you, sir?
THE DEFENDANT: They gave me Thorazine. They gave me Prozac. They gave me Dylantin. They gave me Visterol (phonetic). And Tylenol sometimes for my headache.
THE COURT: What medication have you had in the last 24 hours?
THE DEFENDANT: I've had Thorazine, Prozac, Dylantin, Visterol and I don't think I had any Tylenol.
THE COURT: Are any of these medications that you've taken interfering with your ability to make this decision?
THE DEFENDANT: I know a lot of people if they were looking at the death penalty and copping out they would think it's crazy, but it hasn't hit me yet. Maybe it's the medication. I don't know what it is, but like it's calm. I don't know.
THE COURT: Let me ask you again. Are any of the medicines interfering with your ability to make the decision as to whether you want to go to trial or enter this plea in your best interest?
THE DEFENDANT: A little bit.
THE COURT: Well, if you feel that the medication is interfering with your ability to make this decision then we will go to trial, because I can't accept a plea from you unless I know that you are able to understand and that your reasoning is not
THE DEFENDANT: There is no way that I can stay off the medication for a couple of days?
THE COURT: Mr. Sheinberg [the prosecutor] has indicated that the plea will be withdrawn and the Court does not have the ability to offer a plea.
THE DEFENDANT: So I'm right back to death?
MR. SHEINBERG: Judge, I have to, as an officer of the court, tell you that at this point in time I don't believe that there is an adequate record of his answers to sustain a plea.
THE COURT: I'm ending it now. I can't take this plea. He's indicated that the medication is interfering with his judgment and I've asked him numerous times and he's not been able to respond, so I can not accept the plea. Be ready for trial.
Tennis argues that the trial court should have held a competency hearing once it determined that it could not accept his guilty plea. I agree that this was required if the trial court based its rejection of the plea on questions of Tennis's competency. See Fla. R.Crim. P. 3.210(b).[6] Certainly, if the trial court did not believe Tennis was competent to accept the plea, he would not have been competent to proceed to trial.[7] *382 As the United States Supreme Court has held, "the competency standard for pleading guilty or waiving the right to counsel is [not] higher than the competency standard for standing trial." Godinez v. Moran, 509 U.S. 389, 391, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). Conversely, the State maintains that the court never questioned Tennis's competency but rejected the plea because Tennis was on medication and had exhibited disruptive behavior.
As I see it, a major problem in this case is that the trial court did not explain why it was rejecting the plea, leaving its reasons to speculation. The court's comments evidence the court's hesitation to accept the plea because of the medication's effect on Tennis's ability to make his decision, thereby raising potential concerns about his competency at that time. While the use of medication does not equate with lack of competency, it appears that the court may have believed the medication was interfering with Tennis's ability to enter a knowing and voluntary plea. See Lopez v. State, 536 So.2d 226, 228 (Fla. 1988) ("A guilty plea `must be voluntarily made by one competent to know the consequences of that plea and must not be induced by promises, threats or coercion.'" (quoting Mikenas v. State, 460 So.2d 359, 361 (Fla.1984))).
Under the facts of this case, the trial court should have either accepted the plea or, at the very least, explained on the record its reason for rejecting the plea before requiring Tennis to go to trial where he faced, and ultimately received, the death penalty. I recognize that the State's plea offer expired by its terms and that this Court is without authority to require the State to again offer the defendant a plea of life imprisonment as a remedy. However, because we are reversing on an alternative basis, I urge the State to consider again whether a life sentence without the possibility of parole, if agreed to by the defendant, would be in the best interests of the victim's family and the public. Of course, that is not this Court's call to make, and if the defendant is really trying to "game" the system, then any plea discussions may ultimately be unsuccessful. However, our reversal provides the opportunity for a second chance.
QUINCE, C.J., and WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Tennis argued: (1) the trial court erred in allowing a witness to improperly testify as an expert and to be used as a conduit for hearsay; (2) the trial court erred in allowing the introduction of Sophia Adams's guilty plea without a limiting instruction and in prohibiting Tennis from introducing the factual basis of the plea; (3) the trial court erred in failing to respond to Tennis's requests to represent himself and in not allowing him to represent himself; (4) the trial court erred in failing to hold a competency hearing; (5) the trial court erred in failing to instruct on the lesser included offense of murder in the third degree with grand theft as the underlying felony; (6) Tennis was denied due process and a fair trial because the jury's general verdict may have been based on a legally invalid theory; (7) Tennis was denied due process and a fair trial when his counsel refused to represent him when he took the witness stand; (8) the trial court erred in failing to conduct an adequate inquiry pursuant to Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973); (9) the prosecution took inconsistent positions in violation of due process and the right to a fair trial; (10) the injection of ethnicity into the proceedings denied Tennis a fair trial and fair penalty phase; (11) proportionality; (12) submission of the aggravator that the victim was vulnerable due to advanced age or disability violated double jeopardy; (13) the trial court erred in giving great weight to the jury's recommendation; (14) the trial court erred in rejecting age as a mitigating factor; (15) various constitutional challenges to Florida's death penalty statute; (16) the death sentence was imposed because Tennis was unable to exercise his right to plead guilty; (17) the felony murder aggravator is unconstitutional; and (18) the trial court erred by not finding sufficient aggravating circumstances in writing.
[2] In Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), the Fourth District Court of Appeal instituted the following guidelines for trial courts to follow where a defendant requests that counsel be dismissed:

If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.
Id. at 258-59. This procedure was approved by this Court in Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.1988).
[3] Tennis filed another motion to dismiss counsel on the same date that was nearly identical.
[4] The facts in Indiana v. Edwards are in striking contrast to this case, where no competency hearing was held until after Tennis was convicted, at which Tennis was found competent. In Edwards, the defendant's mental condition became the subject of three competency proceedings and two self-representation requests; and the record was clear that Edwards was mentally ill and lacked the mental capacity to represent himself. 128 S.Ct. at 2382-83. The trial court initially found Edwards incompetent to stand trial but eventually found that while Edwards suffered from "mental illness," he was "competent to assist his attorneys in his defense and stand trial for the charged crimes." Id. at 2382. However, a third competency hearing was held at counsel's request because "further psychiatric and neuropsychological evidence" showed that "Edwards was suffering from serious thinking difficulties and delusions." Id. At that time, the court heard from a "testifying psychiatrist" who stated that Edwards was "unable to cooperate with his attorney in his defense because of his schizophrenic illness." Id. The trial court then concluded Edwards was not competent to stand trial. Id. After it was later reported that Edwards's condition had improved to the point that competency had been restored and a trial was to begin, Edwards requested that he represent himself and requested a continuance. Id. Because the trial court would not grant a continuance, Edwards proceeded to trial with counsel. Id. There was a hung jury on two of the charges and before the retrial, Edwards again made a request for self-representation. Id. Referring to the lengthy records of psychiatric reports, and noting that Edwards still suffered from schizophrenia, the trial court concluded he was "competent to stand trial ... [but not] competent to defend himself." Id. at 2382-83.
[5] The potential impact of Indiana v. Edwards on the scope of the Faretta hearing does not come into play in this case because a hearing was never held and the State has never contended that Tennis was not competent nor was he ever found to be incompetent.
[6] Florida Rule of Criminal Procedure 3.210(b) states in pertinent part:

If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion, and shall order the defendant to be examined by no more than 3, nor fewer than 2, experts prior to the date of the hearing.
Fla. R.Crim. P. 3.210(b).
[7] In this case, a post-guilt phase competency hearing was held, at which Tennis was found to be competent. However, this hearing is not relevant to the present issue because a determination of competency cannot be retroactive. See Tingle v. State, 536 So.2d 202, 204 (Fla.1988); Hill v. State, 473 So.2d 1253, 1259 (Fla.1985).