# Supreme Court of Florida

_____

No. SC20-195
_____

**JOHN F. MOSLEY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

September 15, 2022

COURIEL, J.

This is the appeal of the circuit court's final order resentencing John F. Mosley to death for the murder of his ten-month-old son, Jay-Quan Mosley. The circuit court entered the order after Mosley's second penalty phase trial; we vacated Mosley's original sentence of death pursuant to *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). *Mosley v. State*, 209 So. 3d 1248, 1284 (Fla. 2016).

We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We find that, because the trial court failed to address Mosley's unequivocal

motion to represent himself at his *Spencer*[1] hearing, he is entitled to a new *Spencer* hearing and sentencing hearing.  We do not, however, find that he is entitled to a third penalty phase trial.

**I**

Twice before we have recounted the murders that bring Mosley to this Court.  *Mosley v. State*, 46 So. 3d 510, 514-15 (Fla. 2009); *Mosley*, 209 So. 3d at 1254-55.  A jury convicted him of two counts of first-degree murder after he strangled his girlfriend, Lynda Wilkes; asphyxiated their son, Jay-Quan, in a garbage bag; and disposed of both their bodies, hers by immolation, his in a dumpster.  At the conclusion of his first trial, in 2005, the jury unanimously recommended a life sentence for the murder of Wilkes and, by a vote of eight to four, recommended a death sentence for the murder of Jay-Quan.  The trial court imposed the recommended sentences.

This Court affirmed the convictions and sentence of death on direct appeal.  *Mosley*, 46 So. 3d at 529.  Mosley moved for postconviction relief under rule 3.851 of the Florida Rules of

---

1.  *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

Criminal Procedure. *Mosley*, 209 So. 3d at 1257-58. After an

evidentiary hearing, the postconviction court denied the motion. *Id.*

This Court affirmed that decision as to Mosley's guilt phase claims

but decided that a new penalty phase[2] was required under *Hurst v.*

*Florida*, 577 U.S. 466 (2016).[3] 209 So. 3d at 1284.

---

2. "Upon conviction or adjudication of guilt of a defendant of a capital felony, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment . . . . The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable." § 921.141(1), Fla. Stat. (2004); *see also Engle v. State*, 438 So. 2d 803, 813 (Fla. 1983) (identifying the "three phases of a capital case in the trial court" as "1) The trial in which the guilt or innocence of the defendant is determined; 2) the penalty phase before the jury; and 3) the final sentencing process by the judge").

3. "Any fact '[exposing] the defendant to a greater punishment than that authorized by the jury's guilty verdict' . . . must be submitted to a jury." *Hurst v. Florida*, 577 U.S. 92, 97 (2016) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 (2000)). We initially interpreted *Hurst v. Florida* to mean that in order for a court to impose a death sentence, the jury must unanimously find "the existence of each aggravating factor," "that the aggravating factors are sufficient," and "that the aggravating factors outweigh the mitigating circumstances." *Hurst*, 202 So. 3d at 44. Since the trial judge imposed Mosley's death sentence after "independently weighing the aggravating factors and mitigating circumstances," we vacated Mosley's initial death sentence and remanded for a new penalty phase. *Mosley*, 209 So. 3d at 1284. But later, we receded from our holding that entitled Mosley to a new penalty phase. *State v. Poole*, 297 So. 3d 487, 503-04 (Fla. 2020) (holding that the question whether aggravating factors outweigh the mitigating

Prior to his second penalty phase proceeding for Jay-Quan's murder, Mosley moved to represent himself in arguing a motion for an evidentiary hearing based on newly discovered evidence. On March 20, 2018, after a *Faretta*[4] inquiry, the trial court initially

circumstances "need not be submitted to a jury" because it is "not an element"); *see also Mosley*, 209 So. 3d at 1285 (Canady, J., concurring in part and dissenting in part) ("Based on the jury's verdict establishing the existence of an aggravator, I would conclude that there was no [*Hurst*] violation. . . . *Hurst v. Florida* . . . only requires that the jury find the existence of an aggravator that renders a defendant eligible to be considered for death.").

4. *Faretta v. California*, 422 U.S. 806, 835 (1975), established that the Sixth Amendment to the U.S. Constitution guarantees a defendant the right to conduct his own defense so long as he knowingly and intelligently chooses to do so. Once an accused makes an unequivocal demand to proceed pro se, the court must conduct an inquiry to determine whether the accused is making a competent and intelligent choice, with knowledge of the "dangers and disadvantages of self-representation." *Id.* As the Court said in *Faretta*:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him.

*Id.* at 834.

granted his motion, appointing standby counsel and a mitigation specialist.[5] But the trial court reversed itself when it found that Mosley did not understand what giving up his right to counsel entailed. At the end of the hearing, the trial court took Mosley's motion to proceed pro se under advisement.

With a new judge presiding,[6] Mosley again moved to represent himself pro se. At a hearing on the motion, however, Mosley stated that he did not want to represent himself nor to be represented by his attorney at the time. The trial court denied Mosley's request for another attorney, and Mosley withdrew his outstanding motion to

---

5. The American Bar Association (ABA) Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases explains the function of a mitigation specialist in its commentary to Guideline 4.1: "A mitigation specialist is also an indispensable member of the defense team throughout all capital proceedings. Mitigation specialists possess clinical and information-gathering skills and training that most lawyers simply do not have. They have the time and the ability to elicit sensitive, embarrassing and often humiliating evidence (*e.g.*, family sexual abuse) that the defendant may have never disclosed." *ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (rev. ed. 2003) (footnote omitted).

6. While Mosley's motion was pending, his counsel moved to disqualify the judge, Judge McCallum, on the grounds that her husband had worked on the case as an investigator. Judge McCallum granted the motion, and Judge Weatherby took over the case.

represent himself.

On November 20, 2019, the trial court held its final conference before the penalty phase. Mosley again moved to represent himself. After another *Faretta* inquiry, the trial court granted Mosley's motion to proceed pro se and appointed standby counsel. Mosley requested an eighteen-month continuance to prepare for trial, which the trial court denied.

On December 2, 2019, the trial court proceeded with Mosley's penalty phase. The State called Bernard Griffin, a key cooperating witness, who testified about the murders. On cross-examination, Mosley noted that Griffin was "back on the stand for the state" and asked him, "[A]fter this hearing is done you going to get to go free again or they going to cut your time in half?" The trial court interjected and instructed the jury that "Mr. Griffin is under a 20-year sentence," and "[t]here is no legal avenue for that sentence to be changed at all except perhaps by his death in custody." Mosley protested the judge's intervention. He insisted the "state can send letter recommendations" to the court, "[a]sking to reduce [Griffin's] time." After Mosley's repeated attempts to "establish [Griffin's] motive," the judge responded, "There is absolutely no evidence of

that at all and the Court has no authority whatsoever to change a sentence once the period of expiration has occurred, so I don't care who writes the letter. He ain't going anywhere." On redirect, the prosecutor asked Griffin whether he'd been offered anything in exchange for his testimony. Griffin responded, "No, not at all."

Later in the penalty phase, Mosley called his mother to testify. She testified that her son was a good son; that Mosley's father was physically abusive; that Mosley attended high school, college, and a few police academies; that he had worked as an emergency technician; and that he had served in the Navy. After her initial testimony, she was excused, and several other witnesses testified. The next day, before the first witness was called, Mosley advised the trial court that he wished to recall his mother for further questioning. The State objected, arguing that any additional testimony would be cumulative. Because the trial court had allowed Mosley's mother to attend the proceedings, including the testimony of other witnesses after she testified, and because of the risk of cumulative testimony, the trial court required Mosley first to proffer her testimony outside the presence of the jury. During the proffer, Mosley asked his mother whether his father had sexually

abused his sisters. Additionally, he asked whether his father had physically abused him and whether he had in fact been raised by his grandmother. The trial court allowed Mosley to elicit before the jury his mother's testimony regarding his physical abuse and being raised by his grandmother. But, explaining that the credibility of Mosley's father was not at issue, the trial court did not permit Mosley to ask questions about his father's sexual abuse of Mosley's sisters.

At the conclusion of the penalty phase, the jury unanimously found that the State had proven four aggravating factors: (1) the murder was especially heinous, atrocious, or cruel; (2) the murder was committed in a cold, calculated, and premeditated manner; (3) the victim was less than twelve years of age; and (4) Mosley was previously convicted of another capital felony—that is, Wilkes's murder. The jury unanimously found that the aggravating factors were sufficient to impose the death penalty and found no mitigating circumstances. And the jury unanimously found that the aggravating factors outweighed the mitigating circumstances.

Once the trial judge dismissed the jury, he offered Mosley counsel for his *Spencer* hearing. Mosley accepted, and the judge set

the hearing for January 30, 2020.  But on January 23, 2020, seven days before the *Spencer* hearing, Mosley filed a motion titled, "Unequivocal Demand to Immediately Represent Myself Pro Se."

When the *Spencer* hearing began, the prosecutor acknowledged to the trial court that defense "counsel has provided me a pleading that was filed on January 23rd, 2020 . . . and this was a pro se pleading filed by Mr. Mosley, so I believe prior to addressing the pleadings that have been filed by [defense counsel] we need to address that request."  The trial court responded, "Sure. That's fine.  And I intend to do so."  But then it directed its questions toward the "written motion [for a new penalty phase trial] alleging some 10 or 12 errors."  Mosley's counsel asked for clarification:

> Counsel: "Your Honor, do you want me to go ahead with the Motion For New Penalty Phase argument?
> The Court: "Yes."
> Counsel: "Or do you want to address the pro se motion?"
> The Court: "No, no, no."

After hearing argument, the trial court denied the motion for a new penalty phase, then asked the parties, "Any reason why sentence should not now be imposed?"  Mosley's counsel answered with argument in mitigation, noting testimony from Mosley's mother

about the family's history of abuse. Mosley's counsel inquired whether the court required written sentencing memoranda. The court responded, "I think it was capably argued." The court then asked again, "So is there any reason the sentence should not now be imposed?" Mosley's counsel responded, "There is none, sir, unless you require the sentencing memorandums." The court again declined the memoranda.

The trial court ruled, "Having gone through all of this, the motion for new penalty phase hearing is denied. Mr. Mosley . . . I hereby sentence you to death and remand you to the custody of the Sheriff . . . . Mr. Mosley, now let me address with you a written -- written document which I received this morning called unequivocal demand to immediately represent myself pro se. Do you intend to represent yourself on appeal?" Mosley responded, "That was supposed to be before this *Spencer* hearing." The trial court responded:

> If you had intended it to be -- happen beforehand there's no provision for you representing yourself under the present circumstances. I don't think there would have been any provision at this time anyway because we've gone through everything, but given the fact that I gave you the opportunity to represent yourself during the course of the trial and then you asked me to reappoint

your attorneys which I've done I am not now going to reappoint you to handle the matter today.

The trial court again asked Mosley if he wanted to represent himself, and Mosley again responded, "I respectfully say I wanted to handle my *Spencer* hearing myself." When Mosley continued speaking, the court cut him off, saying, "No, no, no. We're past that, Mr. Mosley. Do you want me to appoint the Public Defender in Tallahassee or whomever to handle your appeal on this particular matter or do you want to handle your appeal yourself?" Mosley responded, "I have no control over it. [You've] already denied me the right to a *Faretta* so I have no comment on that because I wasn't allowed to represent myself and I wanted to and it was extremely important for me to represent myself to give the arguments that I wanted to give." The court moved on and appointed a public defender as Mosley's appellate counsel. Mosley's counsel then filed this appeal.

## II

Of the issues Mosley raises on appeal, we find that one constitutes reversible error: the trial court's failure to address Mosley's motion to represent himself at his *Spencer* hearing. We take up that issue first, then explain why the other issues raised on appeal do not entitle Mosley to a new penalty phase.

## A

Under the Sixth Amendment to the U.S. Constitution, an accused has the "constitutional right to conduct his own defense." *Faretta*, 422 U.S. at 836. We have said that a defendant's choice to invoke this right "must be honored out of 'that respect for the individual which is the lifeblood of the law.' " *Tennis v. State*, 997 So. 2d 375, 377-78 (Fla. 2008) (quoting *Faretta*, 422 U.S. at 834).

Just as a defendant may waive the right to counsel, he or she may waive the right to go it alone. In both *Faretta* and *Tennis*, the defendant invoked his right to conduct his own defense well in advance of trial. *Faretta*, 422 U.S. at 807; *Tennis*, 997 So. 2d at 377. Relying on those precedents, the federal courts, this Court, and several Florida District Courts of Appeal have found that a request to represent oneself at trial can, in the trial court's exercise

of sound discretion, be denied when it is untimely. *See United States v. Dunlap*, 577 F.2d 867, 869 (4th Cir. 1978) ("[O]nce trial has begun, it is within the trial court's discretion whether to allow the defendant to dismiss counsel and proceed pro se."); *McCray v. State*, 71 So. 3d 848, 870 (Fla. 2011) ("As other courts have recognized, a trial court's decisions on a defendant's belated request for self-representation after the trial begins is reviewed for an abuse of discretion."); *Davis v. State*, 162 So. 3d 326, 327 (Fla. 3d DCA 2015); *Thomas v. State*, 958 So. 2d 995, 996 (Fla. 5th DCA 2007). What counts as "untimely" is less settled. Certainly a motion made well in advance of trial is timely. One made on its eve, or certainly after trial has begun, makes it difficult for a trial court, without granting a continuance, to explain to the defendant the significant responsibilities that attend self-representation, and to provide the defendant adequate time to shoulder those responsibilities. A motion for self-representation that comes late is, in that sense, disruptive of orderly proceedings and may result in delay that is unfair to the State, victims, witnesses, and other parties having business before the court. A court may, in its discretion, give weight to those considerations in denying as untimely a motion for

self-representation.

Subject to these considerations, and except in limited circumstances to which we will come shortly, once a defendant makes an unequivocal demand to represent himself, the trial court must conduct a *Faretta* inquiry to determine whether the defendant is knowingly and intelligently waiving his right to counsel. We have said that a trial court's failure to do so is per se reversible error. *McCray*, 71 So. 3d at 864; *Hardwick v. State*, 521 So. 2d 1071, 1074 (Fla. 1988) (explaining that once a defendant exercises his right to self-representation, it is "incumbent upon the court to determine whether the accused is knowingly and intelligently waiving his right to court-appointed counsel, and the court commits reversible error if it fails to do so"), *superseded on other grounds by Hooks v. State*, 286 So. 3d 163, 169 (Fla. 2019); *Tennis*, 997 So. 2d at 379 ("Under our clear precedent, and that of the district courts of appeal, the trial court's failure to hold a *Faretta* hearing in this case to determine whether Tennis could represent himself is per se reversible error."); *see State v. Young*, 626 So. 2d 655, 657 (Fla. 1993) (concluding that *Faretta* and Florida Rule of Criminal

Procedure 3.111(d)[7] require reversal if the lower court does not conduct a proper *Faretta* inquiry); *Jones v. State*, 449 So. 2d 253, 258 (Fla. 1984) (instructing that "the trial court should forthwith proceed to a *Faretta* inquiry" once a defendant exercises his right to self-representation).

A court may deny a defendant's demand for self-representation without a *Faretta* inquiry if the demand is not made unequivocally. *See Hardwick*, 521 So. 2d at 1074 ("We note that the courts have long required that a request for self-representation be stated unequivocally."); *Chapman v. United States*, 553 F.2d 886, 892 (5th Cir. 1977) (requiring an unequivocal demand "because a decision to defend pro se may jeopardize a defendant's chances of receiving an effective defense, and because a pro se defendant cannot complain on appeal that his own defense amounted to a denial of effective assistance of counsel"). And a court may deny an unequivocal

---

7. Fla. R. Crim. P. 3.111(d)(2) ("A defendant shall not be considered to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry has been made into both the accused's comprehension of that offer and the accused's capacity to make a knowing and intelligent waiver.").

demand without a *Faretta* inquiry if, but only if, it finds (with or without regard to timeliness) the demand is designed to delay or disrupt proceedings. *See Young*, 626 So. 2d at 657 ("[A] trial judge is not compelled to allow a defendant to delay and continually frustrate his trial."); *Jones*, 449 So. 2d at 257 ("[N]either the exercise of the right to self-representation nor to appointed counsel may be used as a device to abuse the dignity of the court or to frustrate orderly proceedings.").

Here, the State is correct that Mosley's "Unequivocal Demand to Immediately Represent Myself Pro Se" was untimely, in that it was filed not just after trial had begun, but after it had concluded. It came a week before his *Spencer* hearing and sentencing. But notwithstanding the tumult that had characterized his prior relationship with his counsel and Mosley's vacillation in wanting to represent himself at other times during the proceedings, there was, as to the *Spencer* hearing, no basis in the record to doubt that Mosley wanted to represent himself. He never withdrew or equivocated about his motion, which the trial court had ample time to consider.

True, the determination we must make requires us to

- 16 -

"consider[] the entire scope of the defendant's request, instead of focusing on one isolated statement," *Mosley*, 209 So. 3d at 1272, but Mosley's request about the *Spencer* hearing came at a time that allowed ample consideration by the trial court. It can be sorted from Mosley's other halting assertions of a desire to represent himself during the course of his case.

At the beginning of the *Spencer* hearing, Mosley's counsel and the State brought the motion to the trial court's attention. Given Mosley's unequivocal written request filed a week before the hearing, we look to the record for the trial court's assessment of whether the motion ought to be denied as untimely. But the trial court made no such assessment. Nobody contends that consideration of the motion at that time would have disrupted the proceedings or required any delay in excess of the time it would have taken to hear argument on the motion, or to simply have explained that such argument was untimely. Giving no reason for its decision to do so, the court deferred consideration of the motion to a time when it would be moot. On those facts, we have no basis upon which to assess the trial court's exercise of discretion—to which we of course accord substantial deference where, unlike here,

the trial court's reasoning is amenable to review. *See Grindstaff v. Coleman*, 681 F.2d 740, 742 (11th Cir. 1982) (declining to review a trial court's decision for abuse of discretion because "[t]he trial court in this case did not exercise discretion").

As we said in *Tennis*:

> We understand that in criminal cases, and especially in a death penalty case where the stakes could not be higher, judges may become frustrated over what they perceive to be efforts on the part of a defendant to frustrate or delay the proceedings. We also recognize that presiding over death penalty cases is a difficult and challenging responsibility for a trial judge. However, our cases make clear that when there is an unequivocal request for self-representation, a trial court is obligated to hold a *Faretta* hearing to determine if the request for self-representation is knowing and intelligent.

997 So. 2d at 380. That did not happen here. Under the circumstances presented in this case, this is error requiring reversal. *Hardwick*, 521 So. 2d at 1074; *Tennis*, 997 So. 2d at 379; *Young*, 626 So. 2d at 657.[8]

---

8. The dissent says that the trial court's denial of Mosley's request "was eminently reasonable and far from an abuse of discretion." Opinion concurring in part and dissenting from the judgment at 28. To be clear, our decision today does not mean that a trial court could not have reasonably considered and denied Mosley's request, but rather, that the court in this case abused its discretion when it declined to consider the request until after it had become moot—and for no good, or even apparent, reason.

Mosley raises other issues with the way in which his *Spencer* hearing was conducted. But we do not reach those, as we find it is necessary to remand for a new hearing on this basis alone.

**B**

We do, however, address Mosley's allegations of error at his penalty phase and find that none requires reversal.

Mosley first argues the trial court abused its discretion by preventing cross-examination of Griffin about his motivations to testify at the penalty phase trial,[9] and by telling the jury there was no possible way Griffin could have his sentence reduced for testifying against Mosley. Mosley argues that the trial court's decision curtailed his Sixth Amendment right to confront the witnesses against him. *See Rodriguez v. State*, 753 So. 2d 29, 43 (Fla. 2000) (explaining that it is an "uncontroverted proposition that the Sixth Amendment right of confrontation applies to all three phases of the capital trial").

We find that the trial court permissibly exercised its discretion

---

9. For purposes of this appeal, we consider Griffin's testimony only at the penalty phase.

in determining the scope of Griffin's cross-examination.  *See Patrick v. State*, 104 So. 3d 1046, 1057 (Fla. 2012) (reviewing a trial court's decision to limit cross-examination for abuse of discretion).  While "[b]ias on the part of a prosecution witness is a valid point of inquiry in cross-examination . . . the prospect of bias does not open the door to every question that might possibly develop the subject." *Breedlove v. State*, 580 So. 2d 605, 609 (Fla. 1991) (quoting *Hernandez v. State*, 360 So. 2d 39, 41 (Fla. 3d DCA 1978)); *see also Patrick*, 104 So. 3d at 1058 (concluding that the trial court's choice to limit questioning on an informant's motivations for testifying was not an abuse of discretion, even though the trial court knew the informant would potentially benefit from testifying).  It is settled that "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Moore v. State*, 701 So. 2d 545, 549 (Fla. 1997) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Here, the trial court permissibly limited the scope of cross-examination on the basis of its determination that Griffin would not

qualify for a reduction or suspension of his sentence on account of his penalty phase testimony, as such reduction or suspension requires substantial assistance in the "identification, arrest, or conviction" of an accomplice—none of which would be a result of his penalty phase testimony. § 921.186, Fla. Stat. (2019).

Second, we reject Mosley's argument that the trial court improperly excluded his mother's proffered testimony that his father had sexually abused two of his sisters. We review that decision for abuse of discretion. *Glover v. State*, 226 So. 3d 795, 806 (Fla. 2017); *Frances v. State*, 970 So. 2d 806, 813 (Fla. 2007). We find no such abuse, because the trial court reasonably concluded that Mosley's mother's proffered testimony did not establish that she had personal knowledge of the sexual abuse or how it affected Mosley.

Third, Mosley claims the trial court committed fundamental error by failing to instruct the jury that it must find beyond a reasonable doubt that the aggravating factors were sufficient to justify death and that the aggravating factors outweighed the mitigating factors. But that is not the law. The sufficiency and weight of aggravating factors in a capital case are not elements that

- 21 -

must be determined by the jury beyond a reasonable doubt. *Rogers v. State*, 285 So. 3d 872, 885-86 (Fla. 2019).

Finally, Mosley contends that the trial court erred in refusing to consider his motion for an evidentiary hearing based on newly discovered evidence. But the trial court correctly denied the motion because Mosley was not authorized to file it himself while represented by counsel. *See Puglisi v. State*, 112 So. 3d 1196, 1206 n.14 (Fla. 2013) ("We have previously said that '[t]here is no constitutional right for hybrid representation at trial.' " (quoting *Mora v. State*, 814 So. 2d 322, 328 (Fla. 2002))); *Sheppard v. State*, 17 So. 3d 275, 279 (Fla. 2009) ("[A] defendant has no Sixth Amendment right to simultaneously proceed pro se and with legal representation."); *see also* Fla. R. Crim. P. 3.851(b)(6) ("A defendant who has been sentenced to death may not represent himself or herself in a capital postconviction proceeding in state court.").

## III

We vacate Mosley's sentence of death and remand solely for a new hearing pursuant to *Spencer v. State*, 615 So. 2d 688 (Fla. 1993), and a new sentencing hearing.

It is so ordered.

CANADY, POLSTON, LABARGA, and GROSSHANS, JJ., concur.
MUÑIZ, C.J., concurs in part and dissents from the judgment with an opinion.
FRANCIS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

MUÑIZ, C.J., concurring in part and dissenting from the judgment.

I agree with the majority that Mr. Mosley is not entitled to a new penalty phase trial. But I respectfully disagree with the majority's decision to vacate Mosley's death sentence and to remand for a new sentencing hearing. As the State argues, and as the majority itself acknowledges, Mosley's mid-stream request for self-representation at his *Spencer* hearing was untimely. Neither first principles nor our case law supports the conclusion that the trial court abused its discretion by denying that request.[10]

_____

10. Mosley also raises an unpreserved claim challenging the trial court's failure to recess the *Spencer* hearing before orally imposing sentence. Mosley does not allege that the trial court's procedure violated any constitutional or statutory requirement, nor does he argue that the trial court committed fundamental error. This claim is therefore also without merit.

- 23 -

To begin, the majority and I proceed from a shared understanding that "the right to self-representation is not absolute." *Martinez v. Court of Appeal*, 528 U.S. 152, 161 (2000). Relevant here, "a defendant may forfeit his self-representation right if he does not assert it 'in a timely manner.'" *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Martinez*, 528 U.S. at 162). It follows that, when a trial court denies a self-representation request as untimely, there is no need for a *Faretta* hearing. After all, the purpose of such a hearing is to explain the pitfalls of proceeding without counsel and to ensure that the defendant's decision is voluntary and informed. That "concern is obviated if self-representation is denied for some other reason, such as untimeliness." *Hill*, 792 F.3d at 677.

The majority and I also agree that Mosley's request to represent himself at his *Spencer* hearing was untimely. While there are debates on the margins about how far in advance of trial a defendant must invoke self-representation, a request made after the commencement of meaningful trial proceedings is undisputedly untimely. *See* Wayne R. LaFave et al., *Criminal Procedure* § 11.5(d) (5th ed. 2009); *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir.

2007) (pro se motion made after jury's guilty verdict but before sentencing was untimely). Here, Mosley's penalty phase do-over was well underway—indeed, almost complete—when he made the self-representation request at issue. A *Spencer* hearing is a distinct aspect of the penalty phase, but it is not an independent proceeding for purposes of determining whether a self-representation request is timely. The majority acknowledges this.

My common ground with the majority continues even to the next step in the analysis—we agree that the abuse of discretion standard applies to our review of a trial court's denial of an untimely request for self-representation. *See Horton v. Dugger*, 895 F.2d 714, 717 (11th Cir. 1990) ("Appellate courts routinely uphold the discretion of trial courts to deny as untimely requests made after 'meaningful trial proceedings' have begun." (quoting *United States v. Smith*, 780 F.2d 810, 811 (9th Cir. 1986))); *United States v. Lawrence*, 605 F.2d 1321, 1325 (4th Cir. 1979) ("[I]t is reasonable, and entirely compatible with the defendant's constitutional rights, to require that the right to self-representation be asserted at some time 'before meaningful trial proceedings have commenced,' and that thereafter its exercise rests within the sound discretion of the

trial court." (quoting *Chapman v. United States*, 553 F.2d 886, 895 (5th Cir. 1977))); *accord United States v. Betancourt-Arretuche*, 933 F.2d 89, 96 (1st Cir. 1991) (same); *United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988) (same); *United States v. Cunningham*, 564 F. App'x 190, 194 (6th Cir. 2014) (same); *United States v. Estrada*, 25 F. App'x 814, 819-21 (10th Cir. 2002) (reviewing the district court's decision concerning an untimely request for self-representation for an abuse of discretion).  *Cf. United States v. Bankoff*, 613 F.3d 358, 373 (3d Cir. 2010) ("[D]istrict courts have discretion to deny an untimely request to proceed pro se after weighing the 'prejudice to the legitimate interests of the defendant against the potential disruption of proceedings already in progress.' " (quoting *Buhl v. Cooksey*, 233 F. 3d 783, 797 n.16 (3d Cir. 2000))); *United States v. Stevens*, 83 F.3d 60, 66-67 (2d Cir. 1996) (same); *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983) (same) (quoting *Fulford v. Maggio*, 692 F.2d 354, 362 (5th Cir. 1982), *rev'd on other grounds*, 462 U.S. 111 (1983)); *United States v. Harlan*, 960 F.3d 1089, 1093-94 (8th Cir. 2020) (same) (quoting *United States v. Wesley*, 798 F.2d 1155, 1155-56 (8th Cir. 1986)).

Where the majority and I part company is in our application of the abuse of discretion standard in this case. The majority suggests that the trial court reversibly erred by failing explicitly to declare Mosley's self-representation request untimely. Majority op. at 17 ("Nobody contends that consideration of the motion at that time would have disrupted the proceedings or required any delay in excess of the time it would have taken to hear argument on the motion, or to simply have explained that such argument was untimely."). In my view, this fails to consider the entire record and misapplies the abuse of discretion standard.

It bears emphasis that "the U.S. Supreme Court has never held that a court must inquire into the basis of a defendant's request before denying it as untimely." *Hill*, 792 F.3d at 678. In other words, a trial court can deny an untimely self-representation request without first engaging in a colloquy comparable to a *Faretta* hearing. The Fifth District Court of Appeal has even said, albeit in dicta, that "a defendant's request for self-representation may be summarily denied if not timely asserted." *Laramee v. State*, 90 So. 3d 341, 345 (Fla. 5th DCA 2012).

Because the trial court here was not obligated to follow any set process before ruling on Mosley's untimely self-representation request, we can find an abuse of discretion only "if no reasonable person would arrive at the same conclusion as that of the trial court." *Calloway v. State*, 210 So. 3d 1160, 1178 (Fla. 2017). In light of the entire record, I believe the trial court's decision to deny Mosley's untimely request was eminently reasonable and far from an abuse of discretion.

Before his penalty phase proceeding, during jury selection, and again on the first day of the penalty phase trial, Mosley vacillated between wanting appointed counsel and choosing to represent himself. This required the trial court repeatedly to appoint and unappoint counsel for Mosley. Undoubtedly, the counsel appointed to represent Mosley at his *Spencer* hearing spent time preparing for that hearing, only to have Mosley change his mind yet again. It was in this context that the trial court explained to Mosley: "[G]iven the fact that I gave you the opportunity to represent yourself during the course of the trial and then you asked me to reappoint your attorneys which I've done I am not now going to reappoint you to handle the matter today." I am unaware of any

- 28 -

precedent that would have *required* the trial court here to ignore the disorder inherent in Mosley's untimely request and the accompanying waste of public resources. While the majority faults the trial court for waiting until the end of the *Spencer* hearing to explain its decision to address Mosley's self-representation request, I fail to see how the timing of the trial court's explanation matters.

Finally, I have been unable to locate any authority that supports, much less dictates, the majority's decision. The three cases that the majority cites to bolster its conclusion are inapposite. In *State v. Young*, 626 So. 2d 655 (Fla. 1993), our Court reversed a conviction because the trial court did not conduct an adequate *Faretta* hearing before requiring the defendant to represent himself. In *Hardwick v. State*, 521 So. 2d 1071 (Fla. 1988), we took up the adequacy of a *Faretta* hearing in a case that included no mention of timeliness or a trial court's discretion over untimely self-representation requests. Similarly, the issue of timeliness did not come up in *Tennis v. State*, 997 So. 2d 375 (Fla. 2008).

The majority's decision improves our Court's case law to the extent it clarifies that trial courts have the discretion to deny untimely self-representation requests at the threshold, without first

conducting a *Faretta* hearing.  That said, I believe that the majority undermines that progress by misapplying the abuse of discretion standard here.  I would affirm Mosley's death sentence.

An Appeal from the Circuit Court in and for Duval County,
     Michael R. Weatherby, Judge
     Case No. 162004CF006675AXXXMA

Jessica J. Yeary, Public Defender, and Barbara J. Busharis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

    for Appellant

Ashley Moody, Attorney General, Charmaine M. Millsaps, Senior Assistant Attorney General, and William David Chappell, Assistant Attorney General, Tallahassee, Florida,

    for Appellee