NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JEROME J. DAVIS, DOC # D82350,      )
                                    )
            Appellant,              )
                                    )
v.                                  )      Case No.  2D15-3102
                                    )
STATE OF FLORIDA,                   )
                                    )
            Appellee.               )
                                    )
_____ )

Opinion filed November 22, 2017.

Appeal from the Circuit Court for Polk
County; Roger A. Alcott, Judge.

Howard L. Dimmig, II, Public Defender, and
Marie-Louise Samuels Parmer, Special
Assistant Public Defender, Bartow, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Susan D. Dunlevy,
Assistant Attorney General, Tampa, for
Appellee.


LaROSE, Chief Judge.

        Jerome James Davis appeals his final judgment and sentences.  We have

jurisdiction.  See Fla. R. App. P. 9.030(b)(1)(A).  We reverse and remand for a new trial

because the trial court failed to conduct adequate Nelson[1] and Faretta[2] hearings.

_____

        [1]Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

        [2]Faretta v. California, 422 U.S. 806 (1975).

A jury convicted Mr. Davis of burglary with an assault or battery, in violation of section 810.02, Florida Statutes (2013), false imprisonment, in violation of section 787.02, Florida Statutes (2013), and stalking, in violation of section 784.048, Florida Statutes (2013).  The trial court sentenced him to life in prison for the burglary, five years in prison for the false imprisonment, and twelve months in jail for the stalking.

Mr. Davis argues that the trial court failed to conduct adequate Nelson and Faretta hearings before it allowed him to represent himself.  The State concedes that Mr. Davis is entitled to a new trial.  Mr. Davis also argues that the trial court violated his right to a speedy trial.  Finally, Mr. Davis asserts that the trial court made numerous improper evidentiary rulings.

<u>Background</u>

Mr. Davis appeared for his jury trial with his lawyer from the Public Defender's office.  Mr. Davis told the trial court that he wanted to discharge his lawyer.

> [M]y communications with [my defense counsel] are inadequate.  I have tried to tell you that I've asked the witnesses to come in my behalf, which [my defense counsel] has said that she didn't have time to deposition [sic] them.  When I asked her who she depositioned [sic], she says I don't have time for that.  She wants to tell me how she's going to run my life.  Honorable Alcott, I wouldn't care what -- what the State thinks of me or you think of me at this point.  This is my life.  I don't have time to sit down and argue with [my defense counsel].
>     I believe that I can go off of just the police report.  I believe, Your Honor, with no disrespect to you or the State -- you guys are college educated, you've -- you've done a lot of time in criminal activity -- if you just simply go over the police reports, okay, you will be able to see that this female is lying.  And you would not even -- how would you say -- take her studious [sic].  And I -- and I do hope that you do that in between now and jury selection in time that we go to the court [sic].  All I ask for you, sir, is for you to cut this bracelet off of me and give me a belt and let me pick my jury.  I have

no time to argue with [my defense counsel]. She's dismissed, period.

And also Honorable Ojeda, if you want to call him and ask him -- I went through this before -- excuse me of raising my hands above my shoulders, sir, but how would you say -- I have -- I've represented myself successfully before. So if you need to call Honorable Ojeda to show that I'm competent or whatever, but I shouldn't have to be going through --

. . . .

And [my defense counsel] never has showed me anything that she's doing. She just expects me to just -- just happily go on whatever she says. No ma'am. God -- God bless you.

The trial court asked Mr. Davis if he wanted to discharge his lawyer and represent himself. Mr. Davis responded: "I have to sir. Under the circumstances, I don't . . . have a choice." The trial court then asked Mr. Davis if he was ready to pick a jury that day; Mr. Davis responded affirmatively. The trial court then asked, "and you've prepared your Defense and you're ready to proceed today . . . with your Defense?" Again, Mr. Davis responded affirmatively. The trial court then stated:

Mr. Davis, you're certainly entitled to represent yourself. But I need to have a clear understanding that you're -- have an attorney appointed and available to you, who I found to be an effective attorney, and you're certainly entitled to discharge her and go forward on your own if you want to.

The trial court then asked Mr. Davis if he had ever selected a jury before, and Mr. Davis stated that he had. The trial court did not inquire further into Mr. Davis's ability to represent himself. It stated: "[Defense counsel] based upon his desire to represent himself, I'll discharge the Office of the Public Defender. And we'll bring in the jury." Mr. Davis proceeded to represent himself for jury selection that day.

Two days later, Mr. Davis and the State returned for trial. The trial court asked:

> And because this is a critical stage in the proceedings and, Mr. Davis, you're here today without a lawyer, I want to again advise you[.] [Y]ou have a right to have a lawyer to help you and represent you, if you want one. You indicated to us Monday that you wanted to discharge your lawyer and go without an attorney. Do you still want to do it that way?

Mr. Davis replied that he did not want his appointed lawyer.

Mr. Davis noted that the investigating detective was not on the State's witness list. Mr. Davis knew about the detective because the State provided the case report with the detective's name in discovery. The trial court found the State's failure to list the detective was inadvertent. The detective was not subpoenaed for trial. The State tried to contact him but he was unavailable. Mr. Davis wanted the detective present. Consequently, the trial court discharged the jury and, over Mr. Davis's objection, continued the case. The trial court directed the State to subpoena the detective for trial.

Subsequently, Mr. Davis filed a notice of expiration of speedy trial and sought discharge. The trial court denied his request for discharge. The trial court found that Mr. Davis was partially responsible for the delay in the start of trial. More specifically, Mr. Davis moved to discharge his counsel on the day of jury selection and later insisted that the investigating detective be at the trial.

The trial court later empaneled a second jury and conducted a two-day trial. The jury found Mr. Davis guilty of (1) burglary, as charged; (2) false imprisonment, a lesser included offense of the kidnapping count charged; and (3) stalking, a lesser included offense of the aggravated stalking count charged.

The trial court appointed the Public Defender's office to represent Mr. Davis for sentencing. Again, Mr. Davis asked the trial court to discharge appointed counsel. The trial court conducted a <u>Nelson</u> hearing. The trial court asked Mr. Davis why he thought his counsel was ineffective. Mr. Davis responded that his counsel failed to challenge the scoresheet or get a presentence investigation report (PSI). His appointed counsel responded that she told Mr. Davis that the trial court denied her request for the PSI. She also stated that she told Mr. Davis that she would challenge the scoresheet at sentencing. The trial court found that appointed counsel was not ineffective. It allowed Mr. Davis to proceed pro se for sentencing.

## Discussion

## Nelson and Faretta Hearings

"[W]here the defendant has clearly alleged attorney incompetence and has unequivocally expressed his desire to discharge his counsel, then the court's failure to conduct a <u>Nelson</u> inquiry is reversible error." <u>Finfrock v. State</u>, 84 So. 3d 431, 434 (Fla. 2d DCA 2012). "Generally, this court reviews whether a trial court conducted an adequate <u>Nelson</u> hearing under the abuse of discretion standard." <u>Id.</u> "[W]hile the failure to conduct an adequate <u>Nelson</u> inquiry is subject to an abuse of discretion standard and, presumably, a harmless error analysis, the failure to conduct <u>any</u> inquiry is per se error." <u>Jackson v. State</u>, 33 So. 3d 833, 836 (Fla. 2d DCA 2010).

On the day of the first jury selection, Mr. Davis clearly stated his dissatisfaction with counsel. <u>See</u> <u>Torres v. State</u>, 42 So. 3d 910, 912 (Fla. 2d DCA 2010) ("Preliminarily, the court must determine whether the defendant's request to discharge counsel is unequivocal and, if it is, the court must ascertain the reason for the request."). The trial court did not ask counsel to respond to Mr. Davis's allegations. It

- 5 -

simply found counsel to be effective without any inquiry "to determine if there is reasonable cause to believe that court-appointed counsel is not rendering effective assistance." Maxwell v. State, 892 So. 2d 1100, 1102 (Fla. 2d DCA 2004). The trial court determined counsel was effective and asked Mr. Davis if he wanted to discharge his counsel and represent himself. Mr. Davis answered that he had no other choice, and the trial court discharged his counsel. This exchange was not an adequate Nelson hearing. See Torres, 42 So. 3d at 913 ("[T]he trial court improperly assumed that Torres' dissatisfaction with counsel was not based on counsel's incompetency or that a Nelson hearing, if conducted, would have dispelled any notion of counsel's incompetency."). The only Nelson hearing conducted was at Mr. Davis's later sentencing hearing. Therefore, we must reverse and remand for a new trial. See Laramee v. State, 90 So. 3d 341, 344-45 (Fla. 5th DCA 2012) (holding that trial court's failure to hold a Nelson hearing when defendant made a clear and unequivocal request to discharge his attorney and then to conduct a Faretta hearing after the defendant made "an unequivocal and clear request for self-representation" required reversal).

"Under Faretta and our precedent, once an unequivocal request for self-representation is made, the trial court is obligated to hold a hearing, to determine whether the defendant is knowingly and intelligently waiving his right to court-appointed counsel." Tennis v. State, 997 So. 2d 375, 378 (Fla. 2008). "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." Faretta v. California, 422 U.S. 806, 835 (1975). A defendant

does not need to have the skill or experience of a lawyer to competently and intelligently choose to represent himself. Id. However, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " Id. (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).

The trial court allowed Mr. Davis to represent himself without conducting any further inquiry as to his knowledge of the disadvantages of self-representation. Torres, 42 So. 3d at 912 ("If the defendant seeks to represent himself, the court must conduct a Faretta inquiry to determine that the defendant is knowingly and intelligently waiving his right to counsel."). Mr. Davis told the court that he had represented himself successfully before. However, this does not waive the trial court's duty to conduct a Faretta inquiry. See Eib v. State, 191 So. 3d 977, 979 (Fla. 2d DCA 2016) ("As part of the Faretta inquiry, '[t]rial courts are . . . required to instruct defendants about the disadvantages and dangers associated with self-representation.' " (alteration in original) (quoting Goldsmith v. State, 937 So. 2d 1253, 1256 (Fla. 2d DCA 2006))).

The State concedes that the "trial court erred in failing to conduct a more detailed Faretta inquiry." A new trial is necessary.

### Speedy Trial Violation

Mr. Davis argues that the trial court violated his right to a speedy trial by continuing the trial. Mr. Davis seeks discharge from his judgment and sentences. Mr. Davis began his self-representation on the day of jury selection. He told the trial court that he was prepared to proceed. Yet, on the day testimony was to begin, he inquired about the absence of the investigating detective from the State's witness list. The State inadvertently excluded the detective. The officer was not subpoenaed and did not

respond to calls that morning. Because Mr. Davis wanted the witness present, the trial court rescheduled the trial and directed the State to make this witness available for trial.

A trial court's decision to extend the speedy trial period is reviewed for an abuse of discretion. See Routly v. State, 440 So. 2d 1257, 1261 (Fla. 1983). To determine whether a speedy trial violation has occurred we may look at "(1) the length of the delay, e.g., whether the delay is presumptively prejudicial; (2) the reason for delay; (3) whether the appellant has timely asserted his rights[;] and (4) the existence of actual prejudice as a result of the delay." Howell v. State, 418 So. 2d 1164, 1171 (Fla. 1st DCA 1982). The State filed an information against Mr. Davis on July 3, 2012. It appears that Mr. Davis timely asserted his right to speedy trial. Mr. Davis filed a notice of expiration of speedy trial time on December 20, 2012. He stated that the last day of the recapture period was January 7, 2013. The trial began on April 30, 2013, and concluded on May 6, 2013. Therefore, there was about a ten-month delay between the time of filing the information and the end of trial. We do not find that this delay was presumptively prejudicial. State v. Polk, 993 So. 2d 581 (Fla. 1st DCA 2008) (finding that ten-month delay was not presumptively prejudicial). Here, it is clear that Mr. Davis's decision to represent himself and demand the presence of the investigating detective was at least partially responsible for the delay. Further, Mr. Davis has not demonstrated how the delay actually prejudiced him.

Evidentiary Rulings

Because Mr. Davis will receive a new trial, we do not address his issues concerning the trial court's evidentiary rulings.

## Conclusion

The trial court did not violate Mr. Davis's speedy trial rights. However, and as the State concedes, the failure of the trial court to conduct proper Nelson and Faretta hearings requires a new trial.

Reversed and remanded for a new trial.


LUCAS and BADALAMENTI, JJ., Concur.