DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CURTIS LEROY SHERROD, II,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-0881

[October 2, 2024]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Marni A. Bryson, Judge; L.T. Case No. 50-2022-MM-005980-AXXX-MB.

Carey Haughwout, Public Defender, and Christine C. Geraghty, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Senior Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

Appellant Curtis Leroy Sherrod, II ("Defendant"), timely appeals his battery conviction. We agree with Defendant's contention that the trial court erred when it failed to conduct an adequate *Faretta*[1] inquiry prior to allowing Defendant to represent himself at a pretrial Stand Your Ground ("SYG") hearing. As our Florida Supreme Court has determined that such an error is "per se reversible," we reverse and remand for another SYG hearing and (if unsuccessful at the SYG hearing) a new trial.

**Background**

Defendant was charged with battery. A public defender was appointed to represent him. The public defender filed a motion to dismiss based on the SYG law, section 776.032, Florida Statutes (2022). The trial court set a hearing on the motion.

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

At the SYG hearing, Defendant waived his right to counsel without a *Faretta* procedure. The following discussion ensued:

> [PD]: And now turning to [Defendant's] cases, [Defendant] wishes to represent himself, Your Honor. And so we would ask that you conduct a *Faretta* Hearing into his capability to do that. Just for Your Honor's background, he did represent himself at the federal level already. And so he wishes to do that here, as well. So I told him that the inquiry would be coming.
>
> THE COURT: All right. I need to go get a *Faretta* Hearing outline. Sir --
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: -- you have the Public Defender representing you now, what's the reason for the change?
>
> THE DEFENDANT: The reason for the change, ma'am, is since this trial has started, either it be from schedule mishaps or perhaps a workload, there's been some riff in the things, the directions I want to go in. Haven't been able to collect certain pieces of information I would like to use in this particular hearing. And to be perfectly honest with you, I don't have confidence in her ability to do this the correct way. So I feel that I'm more than able with my ability to go ahead and handle this myself.
>
> . . . .
>
> THE COURT: Fine. You can represent yourself.
>
> THE DEFENDANT: Thank you.
>
> THE COURT: Sit down. Thank you.
>
> [PD]: And then, Your Honor, sorry, just one last matter, just for the purposes of *Faretta*, it just has to be given to him, the option to have [a] court[-]appointed attorney at every important stage of the trial, so here, at pretrial and then at trial.
>
> THE COURT: Right.

2

[PD]: So, I guess we could stay on as --

THE COURT: Standby counsel?

[PD]: -- standby counsel. I'll be here, but I understand [Defendant's] request to represent himself.

THE COURT: Okay. The PD will be standby.

The public defender acted as standby counsel but did not participate in the SYG hearing. Defendant testified at the SYG hearing.

After the SYG hearing, the trial court denied Defendant's SYG motion to dismiss the criminal charge. Later, the trial court held another pretrial hearing, wherein it properly conducted a full *Faretta* inquiry, and Defendant once again chose to represent himself, this time at the coming trial. The public defender was discharged as standby counsel. At trial, Defendant represented himself, and the jury found him guilty. The State did not seek to use Defendant's prior SYG hearing testimony against him at trial.

Defendant elected to have the public defender represent him at sentencing. Defendant was sentenced to twelve months of probation with a special condition of 180 days in jail. This timely appeal follows.

## Analysis

Defendant argues on appeal that the trial court fundamentally erred when it failed to conduct an adequate *Faretta* hearing at the SYG hearing. Specifically, Defendant argues that an SYG hearing is a critical stage of the proceedings that requires a *Faretta* inquiry and that the failure to give a *Faretta* hearing is per se reversible error. Defendant requests reversal of the conviction and sentence and remand for a new SYG hearing and a new trial if Defendant is not found immune from prosecution.

The State does not address Defendant's "critical stage" argument. Instead, the State contends that Defendant was sufficiently "legally savvy" so as not to require a full *Faretta* inquiry and that any error was harmless.

We agree with Defendant that the SYG hearing was a critical stage of the proceedings and the trial court erred in not conducting a full *Faretta* hearing when Defendant requested self-representation at the SYG hearing. We further acknowledge the Florida Supreme Court has determined that

3

*Faretta* violations at a critical stage of the criminal proceeding are "per se reversible error."  Thus, harmless error analysis is not available here.

### A. An SYG Hearing is a "Critical Stage" of a Criminal Process

Florida's SYG law grants immunity to anyone who *justifiably* "uses or threatens to use force."  *Acostafigueroa v. State*, 373 So. 3d 908, 911 (Fla. 4th DCA 2023) (quoting § 776.032(1), Fla. Stat. (2022)).  The statute effectively "grants defendants a substantive right to assert immunity from prosecution and to avoid being subjected to a trial."  *Dennis v. State*, 51 So. 3d 456, 462 (Fla. 2010).  The proper way to assert this immunity is through a motion to dismiss.  *Id.*

*Faretta* applies at every "critical stage" in a criminal proceeding.[2] *Woodbury v. State*, 320 So. 3d 631, 650–51 (Fla. 2021) (quoting *Knight v. State*, 770 So. 2d 663, 670 n.6 (Fla. 2000)); *see also* Fla. R. Crim. P. 3.111(d).  Cases analyzing whether a particular proceeding is a "critical stage" have emphasized that the overarching question is whether there are consequences to a defendant's constitutional rights or when the outcome of a proceeding can cause a defendant prejudice.  *See, e.g.*, *Bell v. Cone*, 535 U.S. 685, 695–96 (2002) ("'[A] critical stage' [is] a phrase [the Court] used [in earlier cases] to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused." (internal citations omitted)); *Traylor v. State*, 596 So. 2d 957, 968 (Fla. 1992) ("[A] 'crucial stage' is any stage that may significantly affect the outcome of the proceedings.").

The benefits of legal representation at an SYG hearing are similar to those discussed in *Coleman v. Alabama*, 399 U.S. 1, 8 (1970).  SYG defense counsel would have the opportunity to observe the strengths and weaknesses in the parties' cases, particularly on the claim of self-defense, and could structure a game plan for the next stage of the proceedings, be it plea negotiations or trial.  SYG defense counsel could also assist the defendant in avoiding SYG hearing pitfalls that would lead to the defendant starting a trial at a disadvantage.  Thus, we find an SYG hearing to be a critical stage of a criminal proceeding.

---

[2] The State has not argued that an SYG hearing is not a critical stage of the criminal proceedings—the State's answer brief "agree[s] for purposes of this appeal that an evidentiary hearing on a Stand Your Ground motion is a critical stage of a proceeding for purposes of the Sixth Amendment right to counsel . . . and a crucial stage of the proceeding for purposes of article I, section 16 of the Florida Constitution." (citations omitted).

### B. The Right to Choose or Reject Criminal Defense Counsel "with Eyes Open"

"Under the United States Supreme Court's ruling in *Faretta*, an accused has the right to self-representation at trial." *Tennis v. State*, 997 So. 2d 375, 377 (Fla. 2008). "[T]he Sixth and Fourteenth Amendments include a 'constitutional right to proceed *without* counsel when' a criminal defendant 'voluntarily and intelligently elects to do so.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (quoting *Faretta*, 422 U.S. at 807). The trial court has an obligation to ensure that a defendant who elects to waive counsel does so "with eyes open" by making the defendant "aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835 (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942)); *Mosley v. State*, 349 So. 3d 861, 867 (Fla. 2022). "[T]he 'purpose of the "knowing and voluntary" inquiry' under *Faretta* 'is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced.'" *Noetzel v. State*, 328 So. 3d 933, 948 (Fla. 2021) (quoting *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)).

"[T]here are no 'magic words' under *Faretta*. Rather, [t]he accused must only be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (cleaned up). Here, as set forth above, the trial court did not conduct any such inquiry with Defendant.

Defendant's reply brief contends "the State analogizes the court's failure to engage in the *Faretta* inquiry here to cases where abbreviated inquiries were found to be adequate because the record showed the defendant 'had proven himself sufficiently sophisticated in his knowledge of the courts and the law that a formal *Faretta* inquiry was not required.' *Davis v. State*, 10 So. 3d 176, 178 (Fla. 5th DCA 2009)." We agree with Defendant that "[t]his analogy does not withstand scrutiny."

We have excused non-compliance with *Faretta* where a defendant has proven himself sufficiently sophisticated in his knowledge of the courts and the law that a formal *Faretta* inquiry was not required. *See Morgan v. State*, 991 So. 2d 984, 988 (Fla. 4th DCA 2008). Other courts have also excused a full inquiry for defendants with some legal education. *Davis*, 10 So. 3d at 179. However, "[t]his is clearly the exception and not the rule." *Id.* at 178.

The record in the instant case does not indicate that the trial court dispensed with an adequate *Faretta* inquiry due to Defendant's "legal knowledge, familiarity with the court system, or presentation of cases before the court." *Id.* The trial court certainly did not make express findings to support such a ruling. "*Faretta* still requires the judge to make a sufficient record that indicates how the defendant's background, including his age, mental status, and education, affects his competency to waive his right to counsel." *Beaton v. State,* 709 So. 2d 172, 174 (Fla. 4th DCA 1998).

Accordingly, we reject the State's argument that the trial court's abbreviated (to say the least) *Faretta* inquiry was sufficient. Moreover, the trial court did not cure this error when it subsequently conducted a proper *Faretta* pre-trial hearing. *Cf. Allen v. State,* 322 So. 3d 589, 597 (Fla. 2021) (holding that a "nunc pro tunc *Faretta* inquiry"—questioning the defendant "as to whether, if the offer of counsel had been [made at the proper point], he would have accepted the offer"—followed by the defendant's representation that he "would have continued to exercise his right to self-representation," is sufficient to "cure[] the error.").

## C. *Florida Supreme Court Precedent Dictates Reversal and Remand for a "Do-Over"*

In *Tennis*, the Florida Supreme Court declared that a trial court's failure to hold a *Faretta* hearing is "per se reversible error." 997 So. 2d at 379. *Tennis*, in turn, relied upon the following Florida cases and parentheticals to reach this conclusion: *State v. Young,* 626 So. 2d 655, 657 (Fla. 1993) ("[T]he United States Supreme Court decision in *Faretta* and our rule 3.111(d) require a reversal when there is not a proper *Faretta* inquiry."); *Rodriguez v. State,* 982 So. 2d 1272, 1274 (Fla. 3d DCA 2008) (holding that court's failure to conduct *Faretta* hearing was reversible error); *Goldsmith v. State,* 937 So. 2d 1253, 1256–57 (Fla. 2d DCA 2006) (holding that the denial of the right of self-representation is not amenable to harmless error analysis). The Florida Supreme Court recently reiterated this precedent, stating that, in the face of an unequivocal and timely demand for self-representation, a trial court's failure to "conduct a *Faretta* inquiry to determine whether the defendant is knowingly and intelligently waiving his right to counsel . . . is per se reversible error." *Mosley,* 349 So. 3d at 867. Thus, without recourse to harmless error resolution, we are compelled to reverse.

## Conclusion

6

Defense counsel informed the court that Defendant wished to represent himself at the SYG hearing. The court announced that it was "go[ing] to get a *Faretta* Hearing outline." The court apparently failed to do so as it granted Defendant's request to proceed pro se without asking questions about his ability to self-represent and without making him "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams*, 317 U.S. at 279). As explained herein, this was error at a critical stage of the criminal proceeding. Neither defense counsel nor the prosecutor placed the court on notice of the deficiency of the *Faretta* "hearing"—the three collectively dropped the ball.

Although the trial court provided a proper *Faretta* inquiry at Defendant's trial, our supreme court's determination that *Faretta* violations are "per se reversible error" precludes us from engaging in harmless error analysis and potentially "conserving scarce judicial resources by avoiding pointless retrials." *United States v. Roy*, 855 F.3d 1133, 1142 (11th Cir. 2017). Thus, we are compelled to reverse Defendant's judgment and sentence and remand for a "do over" as requested by Defendant on appeal.

*Reversed and remanded.*

MAY and KUNTZ, JJ., concur.
FORST, J., concurs specially with opinion.

FORST, J., concurring.

I concur with the reversal in the instant case. The trial court erred in failing to hold a *Faretta* hearing before the SYG proceeding. The trial court had an opportunity to "cure" this error and failed to do so. This error is "per se reversible" because it occurred at a "critical stage of the criminal proceeding" and because the Florida Supreme Court has foreclosed "harmless error" analysis for *Faretta* violations, a determination that I believe should be reconsidered.

## A. An SYG Hearing is a Critical Stage of a Criminal Proceeding

The U.S. Supreme Court has never provided a list of which proceedings in a criminal case constitute "critical stages." *See Van v. Jones*, 475 F.3d 292, 312 (6th Cir. 2007). Nor have Florida courts. Nonetheless, no shortage of caselaw has identified a particular proceeding as a "critical" or "crucial" stage of the proceedings requiring an adequate *Faretta* hearing.

*See, e.g.*, *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (post-indictment interrogation); *Iowa v. Tovar*, 541 U.S. 77, 81 (2004) (plea hearing); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (sentencing process); *United States v. Wade*, 388 U.S. 218, 236–37 (1967) (post-indictment live lineup); *Dickerson v. State*, 228 So. 3d 658, 660 (Fla. 5th DCA 2017) (*Williams* rule hearing); *Kearse v. State*, 858 So. 2d 348, 349 (Fla. 1st DCA 2003) (motion to suppress hearing).

Courts have also identified other proceedings that are not "critical." *See, e.g.*, *United States v. Ash*, 413 U.S. 300, 321 (1973) (post-indictment, pretrial photographic lineup); *Gilbert v. California*, 388 U.S. 263, 267 (1967) (taking of a handwriting exemplar); *Montgomery v. State*, 176 So. 2d 331, 334 (Fla. 1965) (routine preliminary hearings); *Birlkey v. State*, 220 So. 3d 431, 434 (Fla. 4th DCA 2017) (hearing on motion to continue).

Over fifty years ago, the U.S. Supreme Court dealt with a state's failure to provide the defendants with appointed counsel at an Alabama pre-indictment preliminary hearing held "to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury and, if so, to fix bail if the offense is bailable." *Coleman v. Alabama*, 399 U.S. 1, 8 (1970). The Court deferred to the Alabama appellate court's determination "that in cases where the accused has no lawyer at the hearing the Alabama courts prohibit the State's use at trial of anything that occurred at the hearing." *Id.* at 9. The Court nonetheless held "it does not follow that the Alabama preliminary hearing is not a 'critical stage' of the State's criminal process." *Id.*

> Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

*Id.*

As discussed in the majority opinion, the benefits of legal representation at an SYG hearing are similar to those discussed in *Coleman.* I thus agree that an SYG hearing is a critical stage of a criminal proceeding with respect to an individual's Sixth Amendment rights.

**B. The Florida Supreme Court Should Reconsider its "Per Se Reversal" Rule**

**i. Historically, a Pre-Trial Faretta Violation was Not Per Se Reversible Error**

As discussed above, the United States Supreme Court in *Coleman* declared that the trial court erred when it failed to provide the accused parties appointed counsel at a preliminary hearing. 399 U.S. at 9–10. However, the Court did not hold that this constitutional violation necessitated reversal and a new trial. The Court remanded the case to the trial court to address:

> . . . the question of the relief to which petitioners are entitled. The trial transcript indicates that the prohibition against use by the State at trial of anything that occurred at the preliminary hearing was scrupulously observed. But on the record it cannot be said whether or not petitioners were otherwise prejudiced by the absence of counsel at the preliminary hearing. That inquiry in the first instance should more properly be made by the Alabama courts. The test to be applied is whether the denial of counsel at the preliminary hearing was harmless error under *Chapman v. California*, 386 U.S. 18 (1967).

*Id.* at 10–11 (internal citations and footnote omitted).

Shortly after *Coleman*, a Florida appellate opinion contrasted *Coleman*'s remedy for denial of appointed counsel at a preliminary hearing with the remedy imposed for a denial of appointed counsel at trial:

> It must be remembered that the decision in *Coleman v. Alabama* is not the harbinger of hope to those whose conviction is preceded by a preliminary hearing in which the defendant was not represented by counsel as was the case in the aftermath of the decision in *Gideon v. Wainwright*, 372

U.S. 335. In [*G*]*ideon* no consideration was given to the question of prejudice or harm resulting from the absences of trial counsel. Thus, failure to be represented by counsel at trial resulted in a new trial in all cases, no matter how clear and convincing the proof of guilt was and without regard to the defendant's ability to demonstrate harm and prejudice by such denial of counsel. In *Coleman*, however, the Supreme Court was careful to consider the question of the relief to which a defendant who had been denied counsel at the preliminary hearing is entitled. The court resolved the question of appropriate relief by remanding the case to the Alabama state courts for a proceeding to determine whether denial of counsel was harmless error and provided that a conviction could be reinstated upon a finding that no harm or prejudice resulted from lack of counsel.

*Harrison v. Wainwright*, 243 So. 2d 427, 429 (Fla. 1st DCA 1971).

"As the [U.S.] Supreme Court has repeatedly held, the vast majority of constitutional errors that occur at a criminal trial, including Sixth Amendment violations, should be examined for prejudicial effect and those errors do not require reversal if they are harmless." *United States v. Roy*, 855 F.3d 1133, 1167 (11th Cir. 2017). *Roy* included a lengthy quote from *Arizona v. Fulminante*, 499 U.S. 279 (1991), which detailed sixteen cases in which the U.S. Supreme Court "applied harmless-error analysis to a wide range of errors and . . . recognized that most constitutional errors can be harmless." *Roy*, 855 F.3d at 1167–68 (quoting *Fulminante*, 499 U.S. at 306–07). The court in *Roy* next makes a point worthy of repeating here: "There is no good reason why those 16 types of constitutional violations, some of which involve the right to counsel, are subject to review for harmless error but the violation in this case should not be." *Id.* at 1168.

### ii. Non-*Faretta* *Errors Related to SYG Hearings Have Been Treated as Harmless Errors*

An SYG hearing is not a vindication of a constitutional right. *Cruz v. State,* 189 So. 3d 822, 829 (Fla. 4th DCA 2015). "[T]he entire purpose of this immunity [hearing] is to provide a mechanism by which a person who is asserting lawful self-defense may have the defense heard early in the process to avoid the time and expense of a trial." *Valdes v. State*, 320 So. 3d 235, 239 (Fla. 3d DCA 2021) (alterations in original) (quoting *Mency v. State*, 292 So. 3d 1, 2 (Fla. 1st DCA 2019) (Roberts, J., concurring)).

10

The SYG hearing also does not have preclusive effect. The denial of a pretrial SYG motion to dismiss does not prejudice a defendant from making the SYG immunity argument at trial. *Tover v. State*, 106 So. 3d 958, 959 (Fla. 4th DCA 2013); *see also Acostafigueroa*, 373 So. 3d at 913 ("By not filing the motion to dismiss at or before arraignment, petitioner did not waive his right to raise his claim before trial.").

Further, errors impacting an SYG hearing have been found to be harmless if cured by a trial. For example, the failure to hold an SYG immunity hearing is harmless error if a later jury denies the defense. *See Boston v. State*, 326 So. 3d 673, 677 (Fla. 2021). And while improper burden shifting by a trial court is a fundamental error during a trial, improper burden shifting at an SYG hearing is not fundamental error if the burdens are properly applied at a later jury trial. *Compare id.* (misstating burden at an SYG hearing is harmless error), *with Kennedy v. State*, 59 So. 3d 376, 381 (Fla. 4th DCA 2011) ("[F]undamental error occurs where a jury instruction incorrectly defines a disputed element of the crime in such a way as to reduce the state's burden of proof.").

In *Little v. State*, 302 So. 3d 396 (Fla. 4th DCA 2020), the trial court improperly placed the burden of proof at an SYG hearing on the defendant. *Id.* at 398. The SYG motion to dismiss was denied and the defendant subsequently was convicted after trial. *Id.* at 399–401. We found the trial court erred, holding "the burden should have been on the State to rebut Defendant's prima facie claim of self-defense by clear and convincing evidence." *Id.* at 406. We stated:

> [S]ince "[t]he State's trial burden of overcoming the defendant's self-defense claim by proof beyond reasonable doubt is heavier than its pretrial burden of overcoming the defendant's self-defense immunity claim by clear and convincing evidence," the error with respect to the burden of proof at the SYG hearing can be "cured if the State establishes the defendant's guilt at trial by proof beyond a reasonable doubt."

*Id.* at 407 (quoting *Boston v. State*, 296 So. 3d 580, 583 (Fla. 1st DCA 2020)). In light of the jury's guilty verdict, we concluded "the burden of proof error at the SYG hearing was cured and there is no need to remand this case for another hearing." *Id.*

But for the Florida supreme court's "per se reversible error" precedent, it would be reasonable to similarly conclude in this case that the deficient *Faretta* hearing had been cured at trial and no need exists to remand for

another SYG hearing (and perhaps a second trial).  Should the opportunity arise, our supreme court may want to revisit the "per se" ruling.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***